# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Y.Z., a minor, by and through Guardian ad Litem and individual, GRACIELA ARVIZU,<br><br>Plaintiff,<br><br>v.<br><br>CLARK COUNTY SCHOOL DISTRICT,<br><br>Defendant. | Case No. 2:13-cv-01545-APG-PAL<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**<br><br>(Dkt. No. 13) |

In 2013, Plaintiff "Y.Z."[1] filed an administrative claim with the Nevada Department of Education ("NDE") against the Clark County School District ("District"). Y.Z. alleged that the District denied him certain rights in violation of the Individuals with Disabilities Education Act ("IDEA"). During the administrative claim process Y.Z. and the District settled, and the NDE administrative hearing officer incorporated the parties' settlement into an NDE final order. Y.Z. now seeks to recover the attorney's fees he incurred in litigating his claim.

The District argues that only a party who has prevailed in a court action may recover attorney's fees under the IDEA—not, as was the case here, a party who has prevailed in an administrative action. The District also argues that if Y.Z. is permitted to recover fees, his calculation is unreasonable and should be reduced.

I agree with Y.Z. that a plaintiff who prevails in an administrative action may recovery attorney's fees under the IDEA. But I also agree with the District that aspects of Y.Z.'s fee calculation are unreasonable, and I reduce Y.Z.'s award accordingly.

/ / / /

/ / / /

---

[1] Y.Z. is a minor who brings suit by and through his guardian ad litem.

I.  BACKGROUND

Y.Z. is a disabled child from a low income, Spanish-speaking family, who attended one of the District's schools. In April of 2013, Y.Z. filed an NDE Due Process Request alleging the District had violated the IDEA by (1) failing to provide Y.Z. a bilingual program of instruction; (2) failing to provide Y.Z. with a certified special education teacher; (3) failing to provide Y.Z.'s parents with notice in the parents' primary language; and (4) failing to implement certain provisions of Y.Z.'s Individualized Education Plan.[2]  Y.Z. sought, among other things, compensatory education, translation of Y.Z.'s records, and accommodations related to toilet use.[3]

During the NDA administrative process, the parties settled.[4]  The parties' settlement agreement provided Y.Z. with 120 hours of compensatory education, translation of Y.Z.'s records, and accommodations related to toilet use.[5]  Y.Z. requested attorneys' fees during the administrative process, but the District refused to include any fee reimbursement in the settlement agreement.[6]  After the settlement, the NDE administrative hearing officer issued a final order expressly incorporating the parties' agreement.[7]

After the administrative action concluded, Y.Z.'s counsel again contacted the District to request attorney's fees. The District refused to pay.[8]  Y.Z. alleges that during the course of the underlying administrative proceeding, he incurred $6,600.00 in attorney's fee and $805.50 in costs;[9] and during the instant litigation he incurred 6,025.50 in attorney's fees, and $620.00 in

---

[2] (Dkt. #13, Exh. 1.)
[3] (Id.)
[4] (Id.)
[5] (Id.)
[6] (Dkt. #13, at 3.)
[7] (Dkt. #13, Exh. 1.)
[8] (Dkt. #1, at 11, 18.)
[9] (Dkt. #13, Exh. 2.)

2

costs.[10] On August 27, 2013, Y.Z. filed a complaint in this Court seeking reimbursement of attorney's fees and costs related to both the underlying administrative action and the instant court action.

## II. DISCUSSION

The Individuals with Disabilities Education Act ("IDEA") permits a court to "award reasonable attorneys' fees" to the "prevailing party" "[i]n any action or proceeding brought under" the statute.[11] The prevailing party should ordinarily recover attorney's fees unless the court finds that "special circumstances would render such an award unjust."[12]

The District raises two arguments against Y.Z.'s request for fees: (1) Y.Z. is not a "prevailing party" entitled to fees under the IDEA because he received relief in an administrative process, not in court, and (2) Y.Z.'s fee calculation is not reasonable. I find that Y.Z. is a prevailing party entitled to fees under the IDEA, but that Y.Z.'s fee calculation should be reduced.

### A. Prevailing party status

A plaintiff is a "prevailing party" entitled to fees under the IDEA if he (1) brings an action and is provided judicially-sanctioned relief, also referred to as relief with sufficient "judicial imprimatur,[13] and (2) the relief changes the legal relationship between plaintiff and defendant.[14]

---

[10] (Dkt. #13, Exh. 3.)

[11] 20 U.S.C. § 1415(i)(3)(B).

[12] *Seattle Sch. Dist., No.1 v. B.S.*, 82 F.3d 1493, 1502 (9th Cir.1996).

[13] The Ninth Circuit has confirmed that a settlement agreement incorporated into a consent decree may qualify as "judicial relief" for purposes of conferring prevailing party status. *Carbonell v. I.N.S.*, 429 F.3d 894, 901 (9th Cir. 2005) ("In *Labotest,* as here, the district court incorporated a voluntary stipulation agreed to by the parties into an order. We held that "[t]he degree of judicial involvement ... [was] sufficient to satisfy the requisite quantum envisioned by *Buckhannon*.").

[14] *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. Of Health and Human Resources*, 532 U.S. 589, 604 (2001).

Here, apparently the parties do not dispute that the second prong of the test is met: the settlement required the District to provide Y.Z. with compensatory education and other binding relief, thus changing the legal relationship between the parties. The issue in dispute is whether relief provided in an administrative action qualifies as "judicially-sanctioned" relief permitting recovery of attorney's fees under the IDEA; or whether instead, "court-ordered" relief is required.

The IDEA's statutory language indicates a plaintiff may recover attorney's fees after receiving relief in an administrative action. The IDEA provides that a court may award attorney's fees to a party that prevails "[i]n any *action or proceeding* brought under" the statute.[15] As noted by the Second Circuit, "the statute implies that administrative hearings are *proceedings*" in several places.[16] The Department of Education has similarly interpreted the statutory language.[17]

Additionally, the policies behind the IDEA's administrative process—namely efficiency and fairness—militate towards this interpretation.[18] "Congress created a detailed administrative scheme for aggrieved parents to pursue in order to exhaust their remedies under IDEA."[19]

---

[15] 20 U.S.C. § 1415(i)(3)(B)(i).

[16] 591 F.3d 417, Fn. 4; *see also* 20 U.S.C. § 1415(i)(3)(D)(i) ("Attorneys' fees may not be awarded ... in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if [inter alia ] ... the offer is made ... in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins ... and ... the court or administrative hearing officer [makes specified findings] ...." (emphasis added)); 20 U.S.C. § 1415(i)(3)(D)(ii) (referring to attorneys' fees awarded for meetings "convened as a result of an administrative proceeding or judicial action" (emphasis added)).

[17] DOE's Supplemental Letter Br. of May 12, 2004, at 2, A.R. ex rel. R.V. v. N.Y. City Dep't of Educ. (citations omitted) ("[I]t is well settled that attorney[s'] fees are available to parents who prevail at an impartial due process hearing. This Court implicitly so ruled in *Vultaggio v. [Board of Education* ] .... Other Circuits have explicitly held that attorney[s'] fees are available for appearances at an IDEA due process hearing.").

[18] *A.R. ex rel. R.V. v. New York City Dep't of Educ.*, 407 F.3d 65, 76 (2d Cir. 2005) (discussing the "IDEA's intent to permit awards to winning parties in administrative proceedings even where there has been no judicial involvement..."). General principles of judicial efficiency are also served by this interpretation. *In re Lakeshore Vill. Resort, Ltd.*, 81 F.3d 103, 107 (9th Cir. 1996).

[19] *Koster v. Frederick Cnty. Bd. of Educ.*, 921 F. Supp. 1453, 1455 (D. Md. 1996).

Congress crafted this scheme to increase "efficiency by giving [] agencies the [] opportunity to correct shortcomings in their educational programs for disabled students."[20]  The efficiency achieved by the administrative process would be lost under the District's interpretation because students wishing to collect under the IDEA's fee-shifting provision would need to carry out two litigations: one at the administrative level, then another at the District Court level to affirm whatever relief the hearing officer approved.

The District apparently suggests that both the Supreme Court and the Ninth Circuit have held that a party may recover attorney's fees under the IDEA only where a court sanctions the plaintiff's relief.[21]  But neither of those courts has reached this issue.

The Supreme Court case cited by the District, *Buckhannon*, addressed whether a party who brings suit and receives relief in a private settlement—without any involvement by a third-party decision maker—may seek statutory attorney's fees as a prevailing party.[22]  The Supreme Court rejected this practice, also referred to as the "catalyst theory," explaining that a plaintiff may seek statutory attorney's fees only if a judge sanctions the relief.[23]  While language in *Buckhannon* mentions that relief should be "court-ordered" to confer prevailing party status,[24] the Second Circuit has noted that "*Buckhannon* [does not] explicitly instruct … how to apply the rule

---

[20] *Fraser v. Tamalpais Union High Sch. Dist.*, C-06-1255 MMC, 2006 WL 1348427 (N.D. Cal. May 17, 2006) *aff'd sub nom. Fraser v. Tamalpais Union Sch. Dist.*, 281 F. App'x 746 (9th Cir. 2008).

[21] (Dkt. #15, at 5-9.)

[22] *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. Of Health and Human Resources*, 532 U.S. 589, 604 (2001).

[23] *Buckhannon Bd. and Care Home, Inc.*, 532 U.S. 589, 604.

[24] The District suggests *Buckhannon's* requirement of a "court-order" automatically precludes an agency order from conferring prevailing party status.  Even if the Supreme Court meant to affirmatively restrict prevailing party status to orders signed by federal judges, the language would be dicta given the Supreme Court was not faced with the administrative-order issue.

. . . to fees awarded with respect to [] state administrative proceedings."[25] The *Buckhannon* Court was not faced with the question raised in this case, namely, whether agency-sanctioned relief confers prevailing party status.

The Ninth Circuit has held that *Buckhannon's* definition of "prevailing party" applies to the IDEA's attorney fee provision.[26] But the Ninth Circuit has declined to answer the question left open after *Buckhannon*: whether prevailing in an administrative action confers prevailing party status for purposes of statutory attorney's fees provisions.[27] The District implies the Ninth Circuit has held that administrative orders do not confer prevailing party status, citing to *P.N. v. Seattle School Dist. No. 1*.[28] But in *P.N.*, the Ninth Circuit explicitly stated that it was not ruling whether an administrative order may confer prevailing party status, because in that case, no administrative officer signed or approved the settlement in question.[29] In fact, in an unpublished opinion, the Ninth Circuit specifically reversed a District Court for failing to award attorney's fees following a plaintiff's success in an administrative proceeding.[30]

Other courts, including at least the Fifth, Third and Second Circuits, have held that agency orders confer "prevailing party" status.[31] The Second Circuit has repeatedly held that plaintiffs

---

[25] *A.R. ex rel. R.V. v. New York City Dep't of Educ.*, 407 F.3d 65, 67 (2d Cir. 2005).

[26] *See Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 374 F.3d 857, 865 (9th Cir. 2004).

[27] *See P.N. v. Seattle School Dist. No. 1*, 474 F.3d 1165, 1173 (9th Cir. 2007) ("There is language in *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848 (3d Cir.2006), indicating that a consent decree entered by an administrative law judge may meet the judicial imprimatur prong of "prevailing party" . . . [w]e need not consider the Third Circuit's approach as here the settlement agreement was only signed by the parties and no consent decree was entered by any administrative law judge or hearing officer.").

[28] (Dkt. #15, 7-8.)

[29] *See* note 20 and accompanying text.

[30] *Los Angeles Cnty. Office of Educ. v. C.M.*, 550 F. App'x 387, 388 (9th Cir. 2013).

[31] *See, e.g., El Paso Indep. Sch. Dist. v. Richard R.*, 591 F.3d 417, Fn. 4, (5th Cir. Tex. 2009); .*R. ex rel. R.V. v. New York City Dep't of Educ.*, 407 F.3d 65, 67 (2d Cir. 2005); *P.N. v.*

are "entitled to 'prevailing party' status if they obtain the administrative analog of a consent decree from an IHO, even where the terms of such orders arise out of an agreement between the parties, rather than out of the wisdom of the IHO."[32] The Third Circuit has similarly held "a settlement of administrative proceedings that is judicially enforceable meets the *Buckhannon* requirements."[33] I have found no cases holding that an agency order does not confer prevailing party status under the IDEA.[34]

The District also cites *E.W. ex rel. C.W. v. Rocklin Unified Sch. Dist.* to suggest that some District Courts have refused to confer prevailing party status following an administrative proceeding; but that case does not support the District's position. The court in *E.W.* impliedly recognized an agency determination could confer prevailing party status, but ruled that the agency hearing officer's order did not establish that the plaintiff had prevailed in his claim.[35]

Given the IDEA's statutory language, the purpose of the administrative process scheme, and the case law, I find that prevailing in an administrative action is prevailing under the IDEA. Y.Z. is therefore permitted to recover attorney's fees.

---

*Clementon Bd. of Educ.*, 442 F.3d 848, 854 (3d Cir. 2006), as amended (Apr. 27, 2006), as amended (May 16, 2006); *T.D. v. LaGrange, 349 F.3d at 479* ("[T]he IDEA does allow fees to the prevailing party in administrative hearings.").

[32] *V.G. v. Auburn Enlarged Cent. Sch. Dist.*, 349 F. App'x 582, 583 (2d Cir. 2009) (internal citations omitted); *A.R. ex rel. R.V. v. New York City Dep't of Educ.*, 407 F.3d 65, 67 (2d Cir. 2005); *Mr. L. v. Sloan*, 449 F.3d 405, 407 (2d Cir. 2006).

[33] *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 854 (3d Cir. 2006), as amended (Apr. 27, 2006), as amended (May 16, 2006).

[34] To the contrary, cases addressing this specific issue generally hold that agency orders may confer prevailing party status. *See, e.g., Hawkins v. Berkeley Unified Sch. Dist.*, 250 F.R.D. 459, 465 (N.D. Cal. 2008); *C.H. ex rel. M.H. v. Jefferson Twp Bd of Educ.*, CIV.A.05-39(HAA), 2005 WL 4122172 (D.N.J. Dec. 20, 2005) (finding prevailing party status where agency incorporated a settlement agreement into an agency order); *L.H. v. Chino Valley Unified Sch. Dist.*, 944 F. Supp. 2d 867, 874 (C.D. Cal. 2013) ("As previously discussed, *Buckhannon* clarified that to be considered a "prevailing party" in an administrative proceeding, a complainant must achieve a "material alteration" of the parties' legal relationship that is "judicially sanctioned.").

[35] *E.W. ex rel. C.W. v. Rocklin Unified Sch. Dist.*, 2:05-CV-0194-MCE-DAD, 2006 WL 2830172 (E.D. Cal. Sept. 29, 2006).

**B. Fee calculation**

As a preliminary matter, Y.Z. argues I may not reduce its fee calculation because the District unreasonably protracted the litigation. Y.Z. argues the District unreasonably delayed by failing to pay Y.Z.'s attorney's fees when the administrative action was settled.[36] As a general rule, no fee reduction may be made "if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section."[37] I do not find that the District unreasonably protracted this action. The District entered into settlement negotiations within weeks of receiving Y.Z.'s complaint.[38] There were legitimate legal and factual issues implicating whether the District would be required to pay attorney's fees—such as questions about Y.Z.'s prevailing party status, and the status of its counsel. Because the District did not unreasonably protract the litigation, I therefore consider the reasonableness of Y.Z.'s fees.

The District raises two grounds for reduction of Y.Z.'s fee calculation: (1) Y.Z. did not prevail on all of his claims, and (2) Y.Z.'s attorneys billed at excessive rates and for excessive time.

*i.    Reduction for extent of Y.Z.'s success on the merits*

Where a party does not succeed on all of his claims, the court has discretion to reduce the attorney's fees award accordingly.[39] Determining whether a plaintiff's losing claims warrant reduction is not a "mechanical" process, but requires that I "properly consider the parties' achievements in a multi-claim context, considering, for example, hours spent on winning versus losing claims, the level of success achieved, and the degree of overlap between successful and

---

[36] Y.Z. also argues for the first time in his reply, that I am precluded from reducing his attorney's fees because the District committed procedural violations. (Dkt. #19, at 8-9.) Y.Z. provides no authority indicating that settling claims somehow equates to an admission that the District committed procedural violations of the IDEA.

[37] 20 U.S.C. § 1415(i)(3)(G).

[38] (Dkt. #15, Exh. 3.)

[39] *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983); *Aguirre v. Los Angeles Unified Sch. Dist.*, 461 F.3d 1114, 1121 (9th Cir. 2006) ("[A]ttorney's fees awarded under 20 U.S.C. § 1415 are governed by the standards set forth by the Supreme Court in Hensley and its progeny.").

8

unsuccessful claims."[40]  "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the . . . failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."[41]

The District argues any award of fees should be reduced by at least 25% to account for Y.Z.'s failure to obtain relief for two out of his four claims.[42]  Y.Z. originally asserted four claims against the District:

(1) failing to provide Student a bilingual program of instruction;
(2) failing to provide Student with a certified special education teacher;
(3) failing to provide Parent with notice of the agency's actions in Parent's primary language; and
(4) failing to implement certain provisions of Student's IEP.[43]

The District argues Y.Z. succeeded only on his claims regarding document translation for Y.Z.'s parents, and failure to implement aspects of the IEP concerning toilet use.  But as pointed out by Y.Z., the District also agreed to provide 120 hours of education services meant to compensate for issues relating to Y.Z.'s first two claims regarding teaching inadequacies.[44]  The first two claims overlap, as does the relief.  I find that Y.Z.'s relief—including translation services, compensatory education, and remedial efforts related to toilet use—constitute a substantial level of success, and that no reduction is warranted on these grounds.

    *ii.*    *Reasonableness of Y.Z.'s fee calculation*

The IDEA permits Y.Z. to recover only "reasonable" attorney's fees.[45]  Reasonable fees are determined using the lodestar method: multiplying the number of hours the attorney reasonably expended, by an hourly rate prevailing in the community for the type of services the attorney

---

[40] *Crawford v. San Dieguito Union Sch. Dist.*, 202 Fed. Appx. 185, 186 (9th Cir. 2006).
[41] *Hensley v. Eckerhart*, 461 U.S. 424, 435-36 (1983).
[42] (Dkt. #15, at 9-13.)
[43] (Dkt. #15, at 12.)
[44] (Dkt. #13, Exh 1.)
[45] 20 U.S.C. § 1415.

performed.⁴⁶ Where proposed fees are excessive as to number or rate, I have discretion to make a reduction.⁴⁷ The District argues a reduction is warranted because Y.Z.'s counsel billed excessive rates for their work and an excessive number of hours given the circumstances of this case.⁴⁸ I have considered the various lodestar factors, and while I agree that most of Y.Z.'s calculation is proper, I reduce his proposed fees slightly.⁴⁹

      i.      *The number of hours Y.Z.'s attorneys billed*

Generally, "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."⁵⁰ "It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee."⁵¹

Y.Z. submitted detailed billing records meticulously recording counsel's billed hours to the tenth of the hour.⁵² In the underlying administrative litigation, Y.Z.'s counsel billed a total of 22.4 hours for combined attorney and support staff time. Among other things, Y.N's counsel attended at least five meetings with Y.Z.'s parents—each of which had to be translated by staff—investigated the

---

⁴⁶ *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983).

⁴⁷ 20 U.S.C. § 1415(i)(3)(F) (stating fees may be reduced where the rate "unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience; [or] (iii) the time spent and legal services furnished were excessive considering the nature of the action or proceeding ...").

⁴⁸ (Dkt. #15, at 13-18.)

⁴⁹ *See McGinnis v. Kentucky Fried Chicken of California,* 51 F.3d 805, 809 (9th Cir.1994) ("A judge may consider all the factors without talking about all of them because most are not matters on which anything is at issue or needs to be said.").

⁵⁰ *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

⁵¹ *Id.*

⁵² (Dkt. #13, Exh. 2.)

10

parents' complaints, collected evidence, conducted legal research into the parents' claims, drafted the due process complaint, and negotiated with school representatives regarding the claims.[53]

In the instant litigation, counsel billed a total of 18.9 hours for combined attorney and support staff time. Among other things, Y.Z.'s counsel negotiated with the District, prepared the complaint and redacted exhibits, petitioned for a guardian ad litem, filed documents, met with Y.Z.'s parents, prepared disclosures, drafted and responded to written discovery, and prepared the instant motion and accompanying documents. Notably, Y.N's counsel frequently did not bill for time spent on small projects such as preparing supplemental disclosures to its invoices.[54]

For the entire work-up of the case and representation through the administrative process, counsel billed less than three eight-hour days. Counsel billed a little over two eight-hour days for the entirety of the instant litigation, which included thorough briefing of significant legal issues. I find the number of hours billed by Y.Z.'s counsel to be reasonable given the circumstances of this case and the work performed.[55]

### ii. Y.Z.'s counsel's hourly rate

Plaintiffs are entitled to seek reimbursement at the prevailing rate in the community for the kind and quality of services that were furnished. Courts consider various factors when determining whether to reduce rates, including counsel's skill, reputation, and experience.[56]

The District challenges the proposed rate for every Y.Z. attorney and support staff member who worked on this case. The District alleges several defects in Y.Z.'s calculations, including (1) the use of Jean Adam's California rate, (2) insufficient evidence that proposed rates are prevailing in the

---

[53] (Dkt. #13, Exh. 2.)

[54] (Dkt. #13, Exh. 3, at 4.)

[55] The District also suggests that counsels' representation of multiple students in similar cases should warrant a reduction in the number of hours spent on this case. I have no evidence before me indicating Y.Z.'s counsel needlessly repeated work.

[56] *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008); *see also* 20 U.S.G. § 1415(i).

11

community, and (3) that courts in this jurisdiction have awarded no more than $250.00 per hour for similar claims brought by special education attorneys to date.[57]

That Ms. Adams bills $410 per hour in her California practice does not negate Y.Z.'s evidence showing that a well-seasoned lawyer such as Ms. Adams is likely to charge $410 in our community.[58] Ms. Adams has been practicing for almost 30 years, and has practiced in the field of special education for over 10 years.[59] She has represented at least 1,000 children in these types of matters.[60] I see no reason to exclude the modest time she billed as a consultant in this matter, and I find her rate reasonable in this community.[61]

Y.Z.'s proposed rate for Michelle Jones, his primary counsel, is $325 per hour. Y.Z. provided affidavits attesting that this is a reasonable rate in this community given Jones' relative level of experience and skill, and the specialized nature of special education practice.[62] Special education law is a relatively narrow field, and Y.Z. provided evidence indicating there are a limited number of attorneys practicing this type of law in this community.[63] Jones has practiced law for approximately ten years.[64] She has been trained in special education law, and has practiced in this field for over a

---

[57] (Dkt. #15, at 13-21.) The District does not adequately support its contention that no courts in this forum have awarded more than $250 per hour for attorneys in special education cases, and I therefore do not consider this argument.

[58] (Dkt. #13, Affidavit of Deidre Hammon, at ¶ 3.) The District suggests I should ignore Mr. Hammon's declaration because he is not an attorney. Mr. Hammon is a consultant who attested to his familiarity with attorney rates in this community. I see no reason to exclude this evidence. (*Id.* at ¶¶ 1-8.)

[59] (Dkt. #13, Affidavit of Jean Adams, ¶¶ 1-3.)

[60] (*Id.*)

[61] *See, e.g.*, *Waite v. Clark County Collection Servs., LLC*, 2012 U.S. Dist. LEXIS 183732 (D. Nev. Oct. 16, 2012) (discussing recovery of consultant fees).

[62] (Dkt. #. 13, at 3; Exh. 2, at 2-3; Exh.2, at 4-5; 13, Exh. 2, at 6; 13, Exh. 2, at 7.)

[63] (Dkt 19, Exh. 1.)

[64] (Dkt. #13, at 2.)

12

year.[65] The District submits an affidavit from an attorney who has represented the District in special education matters, attesting that Jones' rate is excessive and that courts in this area have only awarded "up to $250" per hour in these types of matters. This is not compelling evidence. Plaintiff's attorneys may very well charge higher hourly rates than attorneys representing the District, and the District does not provide a single citation in support of its assertion that courts have not awarded more than $250 in similar matters. Y.Z. provided a number of affidavits from various unaffiliated attorneys all supporting the $325 rate. I find $325 per hour an appropriate rate in this community.

Y.Z. failed to offer sufficient evidence in support of his proposed rate of $190 and $195 for Alba Ojeda, the paralegal who worked on his case and acted as counsel's translator. The only evidence Y.Z. offers in support of this rate is his counsel's affidavit—which did not even mention that Ojeda's specific rate is prevailing in this community—and a recitation of Ojeda's substantial experience and skill.[66] As suggested by the District,[67] I find $125 per hour is appropriate for the types of services Ojeda provided. I also find that Y.Z.'s proposed fees of $30 for legal support staff services should be removed from his fee calculation.[68] The District has provided sufficient evidence indicating that these sorts of secretarial fees are not typically charged to clients in this community.[69]

   *iii.*   *Reasonable attorney fee award*

I reduce Y.Z.'s proposed calculation of fees and costs related to his administrative action by $359.50 to account for my reduction of Ojeda's rate and the exclusion of Y.Z.'s proposed support services fees. I reduce Y.Z.'s proposed calculation for fees and costs related to his court

---

[65] (*Id.* at 3.)
[66] (Dkt. # 13, Affidavit of Jean M Adams, ¶5.)
[67] (Dkt. #15, at 21; Exh. 7.)
[68] (Dkt. # 13, Exhs. 2-3.)
[69] (Dkt. #15, Exh. 7, at ¶16.)

litigation by $62.50 to account for my reduction of Ojeda's rate.[70] Y.Z. is therefore entitled to recover costs and fees in the amount of $13,629.00.

### III.     CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's motion for fees and costs is GRANTED IN PART. Plaintiff is awarded $13,629.00 in fees and costs.

DATED THIS 20th day of October, 2014.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[70] I calculated these reductions by multiplying Ojeda's billed hours by the new rate of $125 per hour.